```
 1  HOOD & REED
    18141 Beach Blvd., Suite 390
 2  Huntington Beach, CA   92648-5611
    Attn:  James T. Reed, Jr., Bar No. 116933
 3

 4  (714)  842-6837

 5  Attorneys for Plaintiff
    BANK OF THE WEST
 6

 7

 8                UNITED STATES DISTRICT COURT

 9            FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

11

12  BANK OF THE WEST, a California    ) CASE NO. C 07-06469 JSW
    corporation,                      )
13                                    ) Assigned to the
                      Plaintiff,      ) Honorable Jeffrey S. White
14                                    ) United States District Judge
    vs.                               ) Ctrm 2, 17th Floor
15                                    )
    RMA LUMBER, INC., a Virginia      )
16  corporation; ROBIN M. ALLEN, an   )
    individual                        ) ADMINISTRATIVE MOTION TO CORRECT
17                                    ) DEFAULT JUDGMENT
                                      )
18                    Defendants.     )
                                      )
19  _____

20          Plaintiff Bank of the West makes this administrative motion

21  to correct the judgment entered by this Court on June 17, 2008

22  following this Court's approval and adoption of the report and

23  recommendation granting its motion for default judgment.

24          The money judgment portion of the default judgment is, in

25  all respects, accurate and follows the Report and Recommendation of

26  the United States Magistrate Judge.  However, the judgment omits

27  awarding a judgment for possession of the personal property leased by

28
```

1  Bank of the West to the defendant RMA Lumber, Inc. as recommended and
2  discussed in part II.C.4 of the Report and Recommendation and in part
3  III page 12 lines 3-6 of the Report and Recommendation.  A true and
4  correct copy of which is attached hereto as Exhibit 1.
5       Bank of the West tenders the proposed default judgment to
6  include judgment for possession of the leased equipment as to RMA
7  Lumber, Inc.

8                                    HOOD & REED

10  Dated:   June 18, 2008          By: _____
11                                    JAMES T. REED, JR.
                                      Attorneys for Plaintiff
12                                    BANK OF THE WEST

    (JTR:amc)
13  ADMMOT.JUD

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BANK OF THE WEST,<br><br>    Plaintiff,<br><br>v.<br><br>RMA LUMBER, INC., *et al.*,<br><br>    Defendants. | No. C-07-6469 EMC<br><br>**REPORT AND RECOMMENDATION RE PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT**<br><br>(Docket No. 9) |

Plaintiff Bank of the West has filed suit against Defendants RMA Lumber, Inc. and Robin M. Allen for, *inter alia*, breach of contract. After Defendants failed to respond to the Bank's complaint, default was entered by the Clerk of the Court, and the Bank then moved for default judgment. The Court subsequently ordered the Bank to provide supplemental briefing and/or evidence in support of its motion. Having reviewed those supplemental filings, as well as the motion itself and the accompanying submissions, the Court hereby recommends that the motion for default judgment be **GRANTED**.

## I. FACTUAL & PROCEDURAL BACKGROUND

In its complaint, the Bank alleges that, on or about May 23, 2006, it entered into an Equipment Financing Agreement ("Agreement") with RMA pursuant to which the Bank loaned RMA money so that it could purchase certain equipment. *See* Compl. ¶ 6 & Ex. 1 (agreement). In addition, on or about May 22, 2006, the Bank entered into a personal guaranty agreement with Ms. Allen pursuant to which Ms. Allen agreed to pay any and all indebtedness of RMA to the Bank. *See id.* ¶ 20 & Ex. 2 (personal guaranty).



**EXHIBIT 1**

According to the Bank, RMA defaulted under the terms of the Agreement by failing to make the payment due on September 1, 2007, and each subsequent payment. *See id.* ¶ 7. The Bank made a demand for payment, both to RMA and Ms. Allen (as guarantor) but to no avail. *See id.* ¶¶ 7, 13, 22. The Bank claims that it is owed principal in the amount of $469,760.64; accrued interest in the amount of $10,077.59 as of December 7, 2007; late charges in the amount of $10,340.20; and additional interest accruing at the rate of $102.83 per day from December 8, 2007, until payment is made in full or judgment is entered. *See id.* ¶ 8.

Based on the above allegations, as well as other allegations in the complaint, the Bank has asserted the following claims: (1) breach of contract (RMA only); (2) money due (RMA only); (3) recovery of personal property (claim and delivery) (both RMA and Ms. Allen); (4) guaranty (Ms. Allen only); and (5) money lent (Ms. Allen only). After Defendants failed to respond to the complaint, default was entered by the Clerk of the Court on March 12, 2008. *See* Docket No. 8. The Bank subsequently moved for default judgment.

## II.   DISCUSSION

A.   Service of Process

In deciding whether to grant or deny a default judgment, a court must first "assess the adequacy of the service of process on the party against whom default is requested." *Board of Trustees of the N. Cal. Sheet Metal Workers v. Peters*, No. C-00-0395 VRW, 2000 U.S. Dist. LEXIS 19065, at *2 (N.D. Cal. Jan. 2, 2001).

RMA is a corporation and therefore service is governed by Federal Rule of Civil Procedure 4(h). Under the rule, a corporation may be served by delivering a copy of the summons and complaint to an officer of the corporation. *See* Fed. R. Civ. P. 4(h)(1)(B). The Bank has provided a declaration from a process server which states that a copy of the summons and complaint was delivered to Ms. Allen, who is the president of RMA. *See* Docket No. 3. Accordingly, the Court concludes that service as to RMA was proper.

Ms. Allen is an individual and so service is governed by Rule 4(e). Under the rule, an individual may be served by delivering a copy of the summons and complaint to the individual personally. *See* Fed. R. Civ. P. 4(e)(2)(A). The Bank has provided a declaration from a process

1  server which states that a copy of the summons and complaint was delivered to Ms. Allen herself.
2  *See* Docket No. 3. Accordingly, the Court concludes that service as to Ms. Allen was also proper.
3  B.     Merits of Motion for Default Judgment
4          After entry of a default, a court may grant a default judgment on the merits of the case. *See*
5  Fed. R. Civ. P. 55. A default judgment may not be entered, however, against an infant or
6  incompetent person unless represented in the action by a general guardian or other such
7  representative who has appeared. *See id.* Furthermore, a default judgment may not be entered
8  against an individual in military service until after the court appoints an attorney to represent the
9  defendant. *See* 50 U.S.C. App. § 521. In the instant case, there is no evidence that Ms. Allen is an
10 infant, incompetent person, or a person in military service. *See* Kerr Decl. ¶¶ 15-16. Accordingly,
11 the Court may consider whether a default judgment may be entered against Ms. Allen as well as
12 RMA.
13         "The district court's decision whether to enter a default judgment is a discretionary one."
14 *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). Factors that a court may consider in
15 exercising that discretion include:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

20 *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). Upon entry of default, the factual
21 allegations of the plaintiff's complaint will be taken as true, except for those relating to the amount
22 of damages. *See TeleVideo Systems, Inc. v. Heidenthal*, 826 F.2d 915, 917 (9th Cir. 1987).
23        The Court concludes that the majority of the *Eitel* factors weigh in favor of granting the
24 Bank default judgment. For example, if the motion for default judgment were to be denied, then the
25 Bank would likely be left without a remedy. *See Walters v. Shaw/Guehnemann Corp.*, No. C
26 03-04058 WHA, 2004 U.S. Dist. LEXIS 11992, at *7 (N.D. Cal. Apr. 15, 2004) ("To deny
27 plaintiffs' motion [for default judgment] would leave them without a remedy. Prejudice is also
28 likely in light of the merits of their claim."); *Pepsico, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172,

1177 (C.D. Cal. 2002) ("If Plaintiffs' motion for default judgment is not granted, Plaintiffs will likely be without other recourse for recovery."). Notably, the Bank has alleged that it made a demand to both RMA and Ms. Allen but to no avail. *See* Compl. ¶¶ 7, 13, 22. Also, the sum of money at stake in the action is appropriate -- tailored to the specific misconduct of Defendants in failing to make contractual payments as required. *See id.* at 1176 (stating that "the court must consider the amount of money at stake in relation to the seriousness of Defendant's conduct"). Finally, because Defendants have not filed an answer to the Bank's complaint, there is little to suggest that there is a possibility of a dispute concerning material facts, and it is unlikely that Defendants' default was due to excusable neglect, especially when the Bank apparently communicated with Defendants prior to the initiation of any default proceedings, and defense counsel informed counsel for the Bank that Defendants did not intend to appear in the action even if the Bank moved forward with default proceedings. *See* Docket No. 6 (Reed Decl. ¶ 4).

The only factors that deserve closer analysis are the second and third factors. These factors essentially require the Court to examine whether the Bank has adequately stated a claim on which it may recover. *See Pepsico*, 238 F. Supp. 2d at 1175. As noted above, the Bank has asserted the following claims for relief: (1) breach of contract (RMA only); (2) money due (RMA only); (3) recovery of personal property (claim and delivery) (both RMA and Ms. Allen); (4) guaranty (Ms. Allen only); and (5) money lent (Ms. Allen only). As discussed below, the Bank has adequately stated claims for relief for the first, second, fourth, and fifth claims, and so the Court recommends that, based on its evaluation of all of the *Eitel* factors, default judgment is warranted.

1. Breach of Contract and Money Due

As noted above, the Bank has pled a claim for breach of contract, as well as a claim for money due, against RMA. For the reasons discussed below, the Court concludes that the Bank has adequately stated a claim for relief under both theories.

Under California law, the elements of a claim for breach of contract are as follows: (1) existence of a contract; (2) plaintiff's performance or excuse for nonperformance; (3) defendant's breach; and (4) resulting damage to plaintiff. *See EPIS, Inc. v. Fidelity & Guar. Life Ins. Co.*, 156 F.

Supp. 2d 1116, 1124 (N.D. Cal. 2001). In its complaint, the Bank has alleged each of the above elements. As described in the complaint:

(1) The Bank and RMA entered into an Equipment Financing Agreement on or about May 23, 2006, pursuant to which the Bank loaned RMA money so that RMA could purchase certain equipment. *See* Compl. ¶ 6 & Ex. 1 (agreement); *see also* Arterberry Decl., Ex. 1 (agreement).

(2) RMA performed all of the conditions precedent on its part that it was required to perform. *See* Compl. ¶ 10.

(3) RMA breached the Agreement by failing to make the payment due September 1, 2007, and each subsequent payment. *See* Compl. ¶ 7.

(4) The Bank suffered damage as a result, with RMA still owing principal in the amount of $469,760.64; accrued interest in the amount of $10,077.59 as of December 7, 2007; late charges in the amount of $10,340.20; and additional interest accruing at the rate of $102.83 per day from December 8, 2007, until payment is made in full or judgment is entered. *See* Compl. ¶ 8.

Thus, the Bank has adequately stated a claim for breach of contract.

The same allegations above also establish that the Bank has adequately stated a claim for money due. *See* California Judicial Council Form PLD-C-001(2) (pleading form for claim of common counts) (indicating that a claim for common counts may be made when, within the last four years, defendant became indebted to plaintiff "because an account was stated in writing by and between plaintiff and defendant in which it was agreed that defendant was indebted to plaintiff"); *see also First Interstate Bank v. California*, 197 Cal. App. 3d 627, 635 (1987) ("The essential elements of an action for money and/or goods had and received are (1) a statement of indebtedness of a certain sum, (2) the consideration made by the plaintiff, and (3) nonpayment of the debt.").

2. Recovery of Personal Property (Claim and Delivery)

The Bank has asserted a claim for recovery of personal property against not only RMA but also Ms. Allen. The personal property that the Bank seeks to recover is the equipment that RMA purchased with the financing by the Bank.

A party injured by the wrongful exercise of dominion over its personal property may bring an action for specific recovery of the property. *See* 5 Witkin, Cal. Proc. -- Pleading § 651 (4th ed. 1997) (stating that the following elements are typically alleged: (1) plaintiff's right to possession of the property, (2) defendant's wrongful possession, and (3) the value of the property); *see also* Cal. Code Civ. Proc. § 667 (referring to an action to recover the possession of personal property). The Bank does not appear to have a substantive claim against RMA or Ms. Allen. The Bank has a right to obtain possession of the property as one remedy in the event of a breach of the financing agreement. It also has a security interest in the property to secure performance on the agreement.

Thus, with respect to the property, what the Bank seeks is recovery of the equipment as possible *relief*. The Court finds that it is more appropriate to focus on that relief as sought by the Bank because of the breach of contract by RMA and the personal guaranty by Ms. Allen rather than under the auspices of a claim for "claim and delivery." Accordingly, the Court addresses the request for recovery of the equipment below. *See* Part II.C.4, *infra*.

### 3. Guaranty and Money Lent

Finally, the Bank asserts two claims against Ms. Allen -- *i.e.*, guaranty and money lent -- based on the personal guaranty that she signed. For the reasons discussed below, the Court concludes that the Bank has properly stated a claim for relief under both theories.

With respect to the guaranty claim, California Civil Code § 2787 provides in relevant part that "[a] surety or guarantor is one who promises to answer for the debt, default, or miscarriage of another, or hypothecates property as security therefor." Cal. Civ. Code § 2787. In its complaint, the Bank has alleged that Ms. Allen is a guarantor under § 2787. *See* Compl. ¶ 20 (alleging that Ms. Allen "agreed to pay to [the Bank] the amount equal to all indebtedness of [RMA] to [the Bank]"). Furthermore, attached to the complaint as Exhibit 2 is the personal guaranty signed by Ms. Allen, which also establishes that she is a guarantor under § 2787. The personal guaranty provided that,

> [i]n consideration of us providing any present or future financing of any nature to [RMA], including but not limited to entering into the [Equipment Financing] Agreement, you unconditionally guaranty [sic] . . . in favor of us . . . any and all indebtedness of [RMA] to us, whether now existing or subsequently entered into, including but not limited to [RMA's] performance of all of its obligations under the Agreement . . . .

6

1  Compl., Ex. 2 (personal guaranty).
2         Under California Civil Code § 2807, "[a] surety who has assumed liability for payment or
3  performance is liable to the creditor immediately upon the default of the principal, and without
4  demand or notice." Cal. Civ. Code § 2807. As noted above, in its complaint, the Bank has alleged
5  that RMA defaulted by failing to make payments required by the Equipment Financing Agreement.
6  *See* Compl. ¶ 7; *see also* Compl., Ex. 1 (agreement) (providing that "[y]ou are in default if a) you
7  fail to pay any payment when due"). Accordingly, Ms. Allen immediately became liable to the
8  Bank as a result. *See also* Compl., Ex. 2 (personal guaranty) ("agree[ing] that upon any default of
9  [RMA], we may, at our option, proceed directly and at once, without notice against you to collect
10 and recover the full amount you have guaranteed, or any portion of that amount, without proceeding
11 against [RMA] or any other person, and without exercising any other remedy available to us").
12        The same allegations above also establish that the Bank has adequately stated a claim for
13 money lent. *See* California Judicial Council Form PLD-C-001(2) (pleading form for claim of
14 common counts) (indicating that a claim for common counts may be made when, within the last four
15 years, defendant became indebted to plaintiff "because an account was stated in writing by and
16 between plaintiff and defendant in which it was agreed that defendant was indebted to plaintiff").
17 C.     Damages and Other Relief
18        Because default judgment is warranted, the Court must determine what damages or other
19 relief is appropriate. The Bank has the burden of "proving up" its damages. *See Board of Trustees*
20 *of the Boilermaker Vacation Trust v. Skelly, Inc.*, No. 04-02841 CW, 2005 WL 433462, at *2 (N.D.
21 Cal. Feb. 24, 2005) ("Plaintiff has the burden of proving damages through testimony or written
22 affidavit."). Rule 55 also suggests that the Court has authority to examine the propriety of other
23 relief. *See* Fed. R. Civ. P. 55(b)(2) (stating that a "court may conduct hearings . . . when, to enter or
24 effectuate judgment, it needs to . . . (B) determine the amount of damages; (C) establish the truth of
25 any allegation by evidence; or (D) investigate any other matter").
26    1.  Principal
27        The Bank asserts, and the Court concludes that the Bank has provided adequate proof, that
28 the principal owed by RMA/Ms. Allen is $469,760.46.

Under the Equipment Financing Agreement, the principal amount loaned to RMA was $555,350. *See* Arterberry Decl., Ex. 1 (agreement). In exchange for the loan, RMA agreed to pay $11,390.23 each month for term of 60 months. *See* Arterberry Decl., Ex. 1 (agreement). In other words, RMA agreed to pay a total of $683,413.80.[1] *See also* Supp. Arterberry Decl., Ex. 1 (amortization schedule). Accordingly, RMA agreed to pay a total of $128,063.80 in interest.[2]

RMA made 14 payments to the Bank toward principal and interest[3] but failed to make the payment due September 1, 2007, and each subsequent payment. *See* Compl. ¶ 7; Supp. Arterberry Decl. ¶ 3 & Ex. 2 (payment history). The principal still due after these 14 payments is $469,760.46, as reflected in the amortization schedule attached as Exhibit 1 to the supplemental Arterberry declaration. *See* Supp. Arterberry Decl. ¶ 4(B) & Ex. 1 (listing $469,760.46 at line 15).

2. Late Charges

The Bank asks to be awarded not only the principal still owed by RMA but also late charges that were incurred because RMA failed to make timely payments as required by the Equipment Financing Agreement. In its complaint, the Bank asked for late charges in the amount of $10,340.20. However, the Bank now seeks only $6,923.14 in late charges. *See* Supp. Arterberry Decl. ¶ 4(A). The Bank has offered adequate proof that late charges in the amount of $6,923.14 are appropriate.

Under the Equipment Financing Agreement, RMA's payments to the Bank were due on the first day of each month and late charges were incurred on the fifth day thereafter in the amount of 10% of the past due amount. *See* Arterberry Decl., Ex. 1 (agreement). RMA made late payments for each month from March to August 2007 and failed to make the payment at all for September 2007.[4] *See* Supp. Arterberry Decl., Ex. 2 (payment history). The Bank therefore assessed late

---

[1] $11,390.23 x 60 = $683,413.80.

[2] $683,413.80 − $555,350 = $128,063.80.

[3] These 14 payments total $140,258.80. *See* Supp. Arterberry Decl., Ex. 2 (payment history).

[4] It appears that RMA also made a late payment for December 2006, *see* Supp. Arterberry Decl., Ex. 2 (payment history), but the Bank is not seeking a late charge for that month.

8

charges for each month from March to August 2007 and for the month of September 2007. *See* Supp. Arterberry Decl. ¶ 4(A).

Each of the late charges assessed was $1,139.02 -- *i.e.*, 10% of the monthly payment due $11,390.23 -- with the exception of the late charge assessed in May 2007. *See* Supp. Arterberry Decl. ¶ 4(A). For May 2007, the late charge assessed was only $1,089.02, for reasons explained in the supplemental Arterberry declaration. *See* Supp. Arterberry Decl. ¶ 4(A) (explaining that there was a reduced amount because a $500 partial payment had been made on April 30, 2007, which was applied to and in reduction of the May 1, 2007, payment, but when the balance of the May payment, "$10,089.20 was not paid by May 5, 2007, a late charge was incurred of 10% of that amount"). The total amount was then reduced by $1,000 based on a payment made by RMA. This leaves a total of $6,923.14. *See* Supp. Arterberry Decl. ¶ 4(A) (providing calculation).

3. Interest

In addition to the above monetary damages, the Bank also seeks an award of interest on the principal owed by RMA from September 1, 2007, until the date of entry of judgment -- *i.e.*, prejudgment interest on the principal. *See* Supp. Arterberry Decl., Ex. 3 (calculation of interest). For the reasons discussed below, the Bank has provided adequate proof that it is entitled to prejudgment interest on the principal in the amount of $102.83 per day from September 1, 2007, until the date of entry of judgment.

The contract between the Bank and RMA specifically provides for prejudgment interest on the principal. Under the Equipment Financing Agreement, if RMA was in default, then the Bank could require RMA "to immediately pay the casualty payoff described in Section 10 in [the] Agreement." Arterberry Decl., Ex. 1 (agreement). Section 10 provides in relevant part:

> If the Equipment is missing, stolen or damaged, you will, at our option and at your expense, promptly repair the Equipment to our satisfaction, replace the Equipment with equipment of equal purpose and value *or* pay to us any [a)] then due amounts under this Agreement, b) *the outstanding simple interest balance of the Principal Amount assuming timely Payments and a year of 12 months of 30 days each* and 3) 5% of that balance.

Arterberry Decl., Ex. 1 (agreement) (emphasis added). Although the contract does not expressly state what interest rate should be applied, as the Bank explains, the implicit rate is 7.9902% per

annum. *See* 2d Supp. Arterberry Decl. ¶ 5 & Ex. 2; *see also* Cal. Civ. Code § 3289(a) (providing that "[a]ny legal rate of interest stipulated by a contract remains chargeable after a breach thereof, as before, until the contract is superseded by a verdict or other new obligation").

With the remaining principal of $469,760.64, the annual interest at a rate of 7.9902% would be $37,534.81.[5] This translates to $102.83 per day.[6]

### 4. Recovery of Personal Property

Finally, the Bank seeks the recovery of the equipment that RMA purchased with the financing. The Bank seeks this recovery both with respect to RMA and Ms. Allen.

With respect to RMA, the Equipment Financing Agreement with the Bank specifies that, upon default by RMA, the Bank "may, at [its] option do one or more of the following: . . . c) require [RMA] to immediately stop using the Equipment and return the Equipment to [the Bank] in good condition; d) peacefully enter onto [RMA's] premises and take possession of the Equipment without liability to you for trespass or damages; . . . and/or f) use any other remedies available to [the Bank] at law or in equity." Arterberry Decl., Ex. 1 (agreement). Because the Bank has adequately pled a claim for breach of contract, the recovery of the equipment by the Bank -- as provided for by the contract -- is appropriate.

However, with respect to Ms. Allen, the Court does not see how the recovery of the equipment is a proper remedy. The personal guaranty signed by Ms. Allen simply states that she "unconditionally guarant[ees] . . . any and all indebtedness of [RMA]" and that, upon RMA's default, "[the Bank] may, at [its] option, proceed directly and at once, without notice, against [her] to collect and recover the full amount [she has] guaranteed, or any portion of that amount . . . ." Arterberry Decl., Ex. 2 (personal guaranty).

As a final point, the Court notes its agreement with the Bank that it is appropriate for the Bank to recover the equipment even though the Court has also concluded that the Bank should be

---

[5] $469,760.64 x 7.9902% = $37,534.81.

[6] $37,534.81 ÷ 365 = $102.83.

1  awarded full monetary damages. The Equipment Financing Agreement specifically provides that,
2  upon RMA's default, the Bank

> may, at [its] option, do one *or more* of the following: a) require you to pay the casualty payoff described in Section 10 in this Agreement: . . . c) require you to immediately stop using the Equipment and return the Equipment to us in good condition; d) peacefully enter onto your premises and take possession of the Equipment without liability to you for trespass or damages . . . .

Arterberry Decl., Ex. 1 (agreement) (emphasis added). Moreover, as the Bank points out, it is a secured party, *see* Arterberry Decl., Ex. 1 (agreement) (giving the Bank a security interest in the equipment), and an award of both remedies is consistent with California Commercial Code § 9601(a)(1) and (c).[7] *See* Cal. Comm. Code § 9601(a)(1), (c). In disposing of the collateral, the Bank must, of course, comply with California law, including applicable provisions of the California Commercial Code.

There will be no double recovery because the Bank concedes that the final judgment should provide for a reduction in the balance of the monetary damages "upon the recovery and disposition of the Bank's collateral [*i.e.*, the equipment]." Statement at 3; *see also* Statement at 4 ("Upon any disposition following the recovery of the above-described equipment by plaintiff, the net proceeds will be credited to amounts due under the judgment.").

### III. **RECOMMENDATION**

For the foregoing reasons, the Court recommends that the Bank's motion for default judgment be granted.

The Court further recommends that RMA and Ms. Allen be held jointly and severally liable for (1) principal in the amount of $469,760.64; (2) late charges in the amount of $6,923.14; and (3)

---

[7] Section 9601(a)(1) provides that, after default, a secured party may "[r]educe a claim to judgment, foreclose, or otherwise enforce the claim, security interest, or agricultural lien by any available judicial procedure." Cal. Comm. Code § 9601(a)(1). Section 9601(c) provides that "[t]he rights under subdivisions (a) and (b) are cumulative and may be exercised simultaneously." *Id.* § 9601(c); *see also In re Egbe*, 107 B.R. 711 (9th Cir. 1989) (discussing the former version of § 9601 -- *i.e.*, § 9-501 -- which makes clear that all the rights and remedies *within* § 9601(a) and (b) are cumulative).

prejudgment interest on the principal in the amount of $102.83 per day, from September 1, 2007, to the date of entry of judgment.

Finally, the Court recommends that the Bank be entitled to recover the equipment at issue from RMA. The money judgment set forth above should be reduced by the amount of any net proceeds that the Bank may recover from disposition of the equipment. Any such disposition shall comply with California law, including the California Commercial Code.

Any party may file objections to this report and recommendation with the district judge within ten days after being served with a copy. *See* 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b); Civil L.R. 72-3.

Dated: May 29, 2008

EDWARD M. CHEN
United States Magistrate Judge

```
1  James T. Reed, Jr.   Bar No. 116933
   Hood & Reed
2  18141 Beach Boulevard, Suite 390
   Huntington Beach, California 92648
3
   Telephone Number 714.842.6837
4
   Attorneys for Plaintiff
5  BANK OF THE WEST
```

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BANK OF THE WEST, a California corporation<br><br>        Plaintiff,<br>vs.<br><br>RMA LUMBER, INC., and ROBIN M. ALLEN,<br><br>        Defendants | **Case No.: C 07-06469 JSW**<br><br>**ORDER GRANTING ADMINISTRATIVE MOTION TO CORRECT JUDGMENT** |

    Pursuant to this administrative motion by plaintiff and the Magistrate Judge Chen's Report and Recommendation, plaintiff's motion appears to be well taken and the same is HEREBY GRANTED.

**IT IS SO ORDERED.**

Dated: _____, 2008

                                            JEFFREY S. WHITE
                                            UNITED STATES DISTRICT JUDGE

(JTR:amc)ADMINORD.01

James T. Reed, Jr.   Bar No. 116933
Hood & Reed
18141 Beach Boulevard, Suite 390
Huntington Beach, California 92648

Telephone Number 714.842.6837

Attorneys for Plaintiff
BANK OF THE WEST

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BANK OF THE WEST, a California corporation<br><br>            Plaintiff,<br>    vs.<br><br>RMA LUMBER, INC., and ROBIN M. ALLEN,<br><br>            Defendants | Case No.: C 07-06469 JSW<br><br>**(Proposed) Judgment** |

Pursuant to this Court's Order adopting Magistrate Judge Chen's Report and Recommendation re: Plaintiff's motion for default judgment in favor of Plaintiff, judgment is HEREBY ENTERED in favor of Plaintiff and against Defendants in the amount of (1) principal in the amount of $469,760.64, (2) late charges in the amount of $6,923.14; and (3) prejudgment interest in the amount of $102.83 per day, from September 1, 2007, to the date of entry of judgment.

    Judgment is further HEREBY ENTERED in favor of Bank of the West and against the defendant RMA Lumber, Inc., a Virginia corporation for possession of the following personal property:

        1 Peterson 6700B Grinder, S/N 31V-54-1305,

        CAT 3412, 18" Disk Clutch, IRS Hydraulics

    Should plaintiff recover possession of any of the personal property described herein the money judgment shall be credited by the amount of the net proceeds received by plaintiff.

**IT IS SO ORDERED.**

Dated: _____, 2008

                                      JEFFREY S. WHITE
                                      UNITED STATES DISTRICT JUDGE